Ron SOMMERS, as Chapter 7 Trustee FOR ALABAMA AND DUNLAVY, LTD., Flat Stone II, Ltd., and Flat Stone, Ltd., and as Successor in Interest to Jay Cohen, Individually and as Trustee of the JHC Trusts I and II, Petitioner,

v.

SANDCASTLE HOMES, INC., Respondent

Ron Sommers, as Chapter 7 Trustee for Alabama and Dunlavy, Ltd., Flat Stone II, Ltd., and Flat Stone, Ltd., and as Successor in Interest to Jay Cohen, Individually and as Trustee of the JHC Trusts I and II, Petitioner,

v.

NewBiss Property, LP, Respondent

No. 15-0847, No. 15-0848

Supreme Court of Texas.

Argued February 9, 2017

OPINION DELIVERED: June 16, 2017

750

Manuel (Ned) Munoz, Jr., Texas Association of Builders V.P. of Reg. Affairs & Gen. Counsel, Austin, for Amicus Curiae Texas Association of Builders.

Aaron Daniel Day, Texas Land Title Association, Austin, for Amicus Curiae Texas Land Title Association.

Joseph L. Lanza, Texas Association of Builders V.P. of Reg. Affairs & Gen. Counsel, Austin, Charles M. Vethan, Vethan Law Firm, P.C., Houston, James Elio Doyle, Nicole Shirley Bakare, Doyle Restrepo Harvin & Robbins LLP, Houston, Kemp W. Gorthey, Attorney at Law, Austin, for Petitioner.

Blaine Hummel, Bradford Wald Irelan, Irelan McDaniel PLLC, Houston, for Respondent.

Justice Brown delivered the opinion of the Court, in which Justice Green, Justice Johnson, Justice Guzman, and Justice Boyd joined.

*Black's Law Dictionary* tells us that to "expunge" is "[t]o remove from a record[;] ... to erase or destroy." [1] Today we must decide just how much notice is "erased" or "destroyed" when a statute expunges a notice of pending litigation, or lis pendens. Sandcastle Homes, Inc., and NewBiss Property, LP, each bought real property involved in a title dispute. The two companies prevailed at the summary-judgment stage, successfully arguing that Property Code section 12.0071—the lis pendens-expunction statute—eliminated any and all actual or constructive notice of the dispute. [2] Sommers appealed, arguing that the statute does not eliminate the companies' independent notice of the underlying property dispute.

In a split opinion, the court of appeals affirmed. But we hold today that the majority's interpretation conflicts with the statute's plain language. Accordingly, we reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

## I

Jay Cohen was trustee of JHC Trusts I & II (the Cohen Trusts). [3] In this capacity, he transferred several properties belonging to the trust into different partnerships. One instance involved "the West Newcastle property," which Cohen transferred to Flat Stone II, Ltd., a limited partnership. In June 2006, Matthew Dilick, the controlling shareholder of Flat Stone II of Texas, Inc., Flat Stone II's general partner, gave Regions Bank a first-lien deed of trust on the West Newcastle Property as collateral for a personal loan. Dilick defaulted and entered into a foreclosure-forbearance agreement with the bank in April 2009. Two weeks later, Dilick created a limited partnership called West Newcastle, Ltd. He then conveyed a tract from the West Newcastle property (Tract I) to this new limited partnership. Cohen sued, alleging Dilick fraudulently transferred the property and acted outside his authority in all the transfers and subsequent transactions. Cohen filed notices of lis pendens on the various pieces of property involved in the suit.

---

1. *Expunge*, BLACK'S LAW DICTIONARY 702 (10th ed. 2014).

2. This statute has been amended, effective Sept. 1, 2017. *See* Act of May 9, 2017, 85th Leg., R.S., S.B. 1955 (to be codified as an amendment to Tex. Prop. Code § 12.0071) ("The change in law made by this Act applies only to a certified copy of an order expunging a notice of lis pendens recorded on or after the effective date of this Act.").

3. Cohen was the named appellant in the court of appeals. Ray Sommers is the bankruptcy trustee for the partnerships involved and Cohen's successor in interest as trustee for the Cohen Trusts. Therefore, Sommers has replaced Cohen as the named petitioner.

One of the notices of lis pendens dealt specifically with the West Newcastle property and stated that the purpose of the underlying suit was to invalidate the transfer of property to West Newcastle Ltd. and to set aside and cancel any liens Flat Stone II granted, through Dilick, to Regions Bank. The trial court granted the defendants' emergency motions to expunge the notices of lis pendens. Cohen sought mandamus relief in the court of appeals and obtained a stay of the trial court's expungement order. But while the matter was pending at the court of appeals, Dilick conveyed Tract I to Sandcastle for $750,000.

The court of appeals conditionally granted Cohen mandamus relief, holding the trial court erred when it found Cohen's pleading did not articulate a real-property claim on its face.[4] Back at the trial court, Cohen added Sandcastle as a defendant and sought to set aside its recent purchase of Tract I. After another hearing on the applications to expunge the lis pendens notice, the trial court again ordered the lis pendens expunged—finding that Cohen "failed to establish by a preponderance of the evidence the probable validity of a real property claim."[5] Meanwhile, between the hearing and the trial court's entering of the expungement order, Dilick transferred the remainder of the West Newcastle property (Tract II) back to Flat Stone II. Cohen filed another mandamus petition and a motion to stay in the court of appeals, but the court denied his requests. Dilick subsequently sold Tract II to New-Biss for $1.8 million. Cohen added New-

Biss as a defendant to the lawsuit, seeking to set aside this latest purchase.

Sandcastle and NewBiss claimed bona-fide-purchaser status, and each filed summary-judgment motions. Both claimed they lawfully relied on the trial court's expungement order, which voided any notice derived from the lis pendens. The trial court granted both motions and rendered separate final judgments.

A divided court of appeals affirmed, holding that the expunction statute extinguishes actual and constructive notice of the underlying claims. 469 S.W.3d 173 (Tex. App.—Houston [1st Dist.] 2015). Two days before the court of appeals issued its opinion, the underlying lawsuit was removed to bankruptcy court, though the claims involving Sandcastle and NewBiss were severed and remained in the trial court. Several months later, the bankruptcy court entered a final declaratory judgment granting Sommers's motion to realign claims. Sommers subsequently brought this appeal.

## II

### A

Sandcastle and NewBiss contend Sommers lacks standing to continue the appeal in this case because he was not a named party in the original action. Generally, only a named party to the suit may bring an appeal. *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 754 (Tex. 2003). But here, the bankruptcy court issued a declaratory judgment that Sommers is the proper plaintiff since the claims against Sandcastle and NewBiss be-

---

4. *In re Cohen*, 340 S.W.3d 889, 900 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding); *see also* Tex. Prop. Code § 12.0071(c)(1) (authorizing expunction of a notice of lis pendens where the pleading in the underlying suit does not contain a cognizable real-property claim).

5. *See* Tex. Prop. Code § 12.0071(c)(2) (authorizing expunction of a lis pendens notice where the claimant fails to establish the probable validity of the real-property claim by a preponderance of the evidence).

long to the bankruptcy estate.[6] The judgment explicitly provides that the claims belong to Sommers as the bankruptcy trustee.[7]

We have held that once claims clearly belong to the bankruptcy estate, "then the trustee has exclusive standing to assert the claim[s]." *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999) (quoting *Schertz-Cibolo-Universal City Indep. Sch. Dist. v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994)); *see also* 11 U.S.C. § 323(a) (stating that the bankruptcy trustee is the representative of the estate). The bankruptcy court recognizes Sommers's authority to pursue claims against Sandcastle and NewBiss on behalf of the estate.[8] So do we.

## B

### 1

Pending the outcome of an action involving proper title to, establishing an interest in, or enforcing an encumbrance against real property, the party seeking relief may file a notice of lis pendens in the county's real-property records. *See* TEX. PROP. CODE § 12.007(a). A notice of lis pendens broadcasts "to the world" the existence of ongoing litigation regarding ownership of the property. *Id.* § 13.004(a). When the notice is properly filed, even a subsequent purchaser for value does not take the property free and clear. *See id.* § 13.004(b).

We have explained that a lis pendens functions to provide constructive notice,[9] avoid undue alienation of property,[10] and facilitate an end to litigation.[11] Through the years, the courts of appeals have held the same.[12] The latter two purposes are particularly implicated when we address the court's ability to *expunge* a notice of lis pendens. The trial court may expunge a notice of lis pendens if (1) the pleading on which the original order rests does not include a real-property claim; (2) the claimant does not appropriately establish the probable validity of his real-property claim; or (3) the claimant fails to serve a copy of the record notice on all entitled to

---

6. Final J. on Decl. J., *In re Ala. & Dunlavy, Ltd., Flat Stone II, Ltd., & Flat Stone, Ltd.*, [15-03190] Bankr. S.D. Tex. (Nov. 16, 2015).

7. *Id.* at 1.

8. *See id.* (referencing Sommers's Amended Original Complaint, which names Sandcastle and NewBiss as defendants in the estate's claims).

9. *See Lee v. Salinas*, 15 Tex. 495, 498 (1855).

10. *See Rippetoe v. Dwyer*, 65 Tex. 703, 707 (1886).

11. *See City Nat'l Bank v. Craig*, 113 Tex. 375, 257 S.W. 210, 211 (1923) (citing *Lee*, 15 Tex. at 497 and *Rippetoe*, 65 Tex. at 707).

12. *See In re Miller*, 433 S.W.3d 82, 84–85 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (recognizing the purpose of a lis pendens notice is to provide constructive notice); *Killam Ranch Props., Ltd. v. Webb Cty.*, 376 S.W.3d 146, 159–60 (Tex. App.—San Antonio 2012, pet. denied) (same); *David Powers Homes, Inc. v. M.L. Rendleman Co.*, 355 S.W.3d 327, 336 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (holding that the notice's purpose is to prevent alienation and provide constructive notice); *Long Beach Mortg. Co. v. Evans*, 284 S.W.3d 406, 413–14 (Tex. App.—Dallas 2009, pet. denied), *cert. denied*, 561 U.S. 1006, 130 S.Ct. 3470, 177 L.Ed.2d 1056 (2010) (explaining the purpose of the lis pendens statute is to provide constructive notice); *World Sav. Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (recognizing constructive notice and the prevention of undue alienation as the general purposes of lis pendens); *In re Collins*, 172 S.W.3d 287, 292–93 (Tex. App.—Fort Worth 2005, orig. proceeding) (stating the statute's purpose is constructive notice); *Cherokee Water Co. v. Advance Oil & Gas Co.*, 843 S.W.2d 132, 135 (Tex. App.—Texarkana 1992, writ denied) (citing *City Nat'l Bank*, 257 S.W. at 210) (identifying the public policy of the lis pendens statute is to end litigation).

receive it. Tᴇx. Pʀᴏᴘ. Cᴏᴅᴇ § 12.0071(c)(1)–(3). Here, Sandcastle obtained the first expunction order because the trial court found Cohen's pleadings did not include a real-property claim, while the second order was based on Cohen's inability to establish the probable validity of his claim.

### 2

We review de novo the trial court's decision to grant Sandcastle's and NewBiss's summary-judgment motions based on the effect of the second lis pendens expunction. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). The movant must show there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). We read the record in the light most favorable to the non-movant, with every reasonable inference favoring the non-movant and all doubts resolved against the movant. *City of Keller v. Wilson*, 168 S.W.3d 802, 822–23 (Tex. 2005). But this case also involves a question of first impression for this Court—one of statutory interpretation, which we also review de novo. *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex. 2014).

Today the parties ask us to decide one basic question: When a notice of lis pendens is expunged, is all notice—no matter the sort and no matter its source—extinguished with the expunction order? The interpretation of legal texts, distilled down, concerns one question: What does the language mean? The statutory language itself is what constitutes the law. "Our basic presumption: legislators enact; judges interpret." Aɴᴛᴏɴɪɴ Sᴄᴀʟɪᴀ & Bʀʏᴀɴ A. Gᴀʀɴᴇʀ, Rᴇᴀᴅɪɴɢ Lᴀᴡ: Tʜᴇ Iɴᴛᴇʀᴘʀᴇᴛᴀᴛɪᴏɴ ᴏꜰ Lᴇɢᴀʟ Tᴇxᴛs, xxx (2012) (citations omitted). We presume the Legislature intended precisely what it enacted and strive to give statutory language its fair meaning. *Combs v. Roark Amusement &Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013). To do this, we analyze a statute as a cohesive, contextual whole, accepting that lawmaker-authors chose their words carefully, both in what they included and in what they excluded.

Property Code section 12.0071 allows a lis pendens to be expunged and details the expunction's effects:

After a certified copy of an order expunging a notice of lis pendens has been recorded, the notice of lis pendens and any information derived from the notice:

  (1) does not:

    (A) constitute constructive or actual notice of any matter contained in the notice or of any matter relating to the proceeding;

    (B) create any duty of inquiry in a person with respect to the property described in the notice; or

    (C) affect the validity of a conveyance to a purchaser for value or of a mortgage to a lender for value; and

  (2) is not enforceable against a purchaser or lender described by Subdivision (1)(C), regardless of whether the purchaser or lender knew of the lis pendens action.

Tᴇx. Pʀᴏᴘ. Cᴏᴅᴇ § 12.0071(f)(1)–(2).

Cohen's primary contention before the court of appeals was that Sandcastle and NewBiss could not conclusively establish their bona-fide-purchaser affirmative defense because they had separate notice of the claim on the property—disqualifying knowledge obtained by means independent of the lis pendens filing. Such knowledge, Cohen urged, could not be effectively undermined by the expunction statute because independent actual notice does not constitute information contained in "the

notice of lis pendens" or "any information derived from the notice." *Id.* § 12.0071(f).

The court of appeals rejected what it saw as a narrow view of the statute and instead advanced a bright-line rule that the expunction of notice includes *any notice* of the claims involved in the underlying suit covered by the lis pendens. 469 S.W.3d at 186 ("[E]xpunction . . . effectively extinguishes 'notice' of the claims identified in the notice of lis pendens. . . ."). But the court of appeals reads the plain text of the statute too broadly. We agree with the dissenting justice that "[t]he statute simply doesn't address the circumstance of a purchaser who receives notice of a third-party claim by some means other than a recorded notice of lis pendens." *Id.* at 190 (Massengale, J., dissenting).

■ Property Code section 12.0071(f) provides that a purchaser cannot be charged with record notice, actual or constructive, following a proper expungement. But the extent of that protection is expressly limited to "the notice of lis pendens" and "any information derived from the notice." TEX. PROP. CODE § 12.0071(f). "[B]y negative implication, expunction is given no effect with respect to the universe of other information, not included in the scope of section 12.0071(f), that is neither (a) the 'notice of lis pendens' itself nor (b) 'information derived from the notice' of lis pendens." 469 S.W.3d at 191.

Sandcastle and NewBiss also rely on section 12.0071(f)(2) of the Property Code to argue that expungement destroys all information that *could have been* derived from the notice, no matter the actual source. That provision specifies that the notice of lis pendens and any information derived from the notice "is not enforceable against a purchaser or lender . . . regardless of whether the purchaser or lender knew of the lis pendens action." But the interpretation Sandcastle and NewBiss would have us give subsection (f)(2) ignores its context. Subsection (f)(2) is subject to the unindented portion of section 12.0071(f)—the portion that delimits the expungement to "the notice of lis pendens" and "any information derived from the notice." TEX. PROP. CODE § 12.0071(f).[13]

Derived, by definition, refers to a particular source of information. *See Derive,* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 608 (2002) (defining derive as "to take or receive esp. from a source"); *accord Derive,* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 489 (5th ed. 2016) ("To obtain or receive from a source. . . ."). The interpretation Sandcastle and NewBiss endorse impermissibly enlarges the provision's meaning and operation, which directs expunction of a recorded lis pendens notice and eradicates the effects of filing one. If the Legislature meant to go further and include any information that *could have been derived* from the notice, it could have said so explicitly.[14] Absent a plainer pronouncement from the Legislature, we must read the provisions together as a contextual whole in a manner that abides the scope set forth in section 12.0071(f).

■ The expunction statute specifically instructs that the recorded notice is expunged. *See* TEX. PROP. CODE § 12.0071(a) (describing process for party

---

13. To the extent there is disharmony between the provisions, the "material contained in unindented texts relates to all the following . . . indented subparts." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 156 (2012).

14. Indeed, the Legislature now has. The amended provision applies to "the notice of lis pendens and any information derived or that could be derived from the notice." *See* TEX. PROP. CODE § 12.0071(f) (as amended by Act of May 9, 2017, S.B. 1955).

to apply to "expunge the notice"); *id.* § 12.0071(c) ("The court shall order the *notice of lis pendens* expunged...." (emphasis added)); *id.* § 12.0071(f) ("After a certified copy of an order expunging a *notice of lis pendens* has been recorded...." (emphasis added)). The fact that subpart (f) of section 12.0071 expressly precludes enforcement of the notice and information derived from the notice against a purchaser or lender "regardless of whether the purchaser or lender knew of the lis pendens action" merely confirms that the Legislature meant to address both actual and constructive notice arising from the lis pendens filing and the information contained in that notice.[15] We decline to construe the provision to mean that *any* information coextensive with the information contained in the notice or the underlying litigation that may be obtained independently is also legally eradicated. Such separate means of notice is necessarily unrelated to the actual expungement and exceeds the reach expressed by the statutory language.[16]

■ Accordingly, to the extent the recorded lis pendens puts a potential buyer on inquiry notice to look to the actual

lawsuit before the notice's expunction, that buyer could claim protection under the statute. Any actual awareness obtained by review of the facts referred to in the lis pendens cannot be used to rebut that purchaser's status as a bona-fide purchaser or to continue to burden the property.[17] But that does not mean the expunction statute can be read so far as to eradicate notice arising independently of the recorded instrument expunged. We are confined by a statute's text as written. *See, e.g., Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 71 (1920) ("Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language, and not elsewhere.").

■ Expunction of the lis pendens is a restoration of the chain of title free of the record notice of a potential claim of interest associated with the lis pendens. It is not an adjudication of a later purchaser's status as a bona-fide purchaser under any set of circumstances.[18] Such an overbroad

---

**15.** "The party filing a lis pendens or the party's agent or attorney shall sign the lis pendens, which must state: (1) the style and number, if any, of the proceeding; (2) the court in which the proceeding is pending; (3) the names of the parties; (4) the kind of proceeding; and (5) a description of the property affected." Tex. Prop. Code § 12.007(b).

**16.** We conform to the Legislature's usage throughout the lis pendens statute and treat the notice of lis pendens and the underlying action as distinct. *See, e.g.,* Tex. Prop. Code § 12.0071(a) ("A party to an action in connection with which a notice of lis pendens has been filed...."); *id.* § 12.0071(f)(1)(A) (discussing the effect of expungement of notice as to "any matter contained in the *notice* or of any matter relating to the *proceeding*" (emphasis added)).

**17.** The ultimate effect of a lis pendens notice is to deprive either party in the litigation of the ability to alienate the property in dispute. *See Black v. Burd*, 255 S.W.2d 553, 555 (Tex. Civ. App.—Fort Worth 1953, writ ref'd n.r.e.). "Under the rule, one acquiring an interest in property from a party pending litigation in regard to it is bound by the result." *Gantt*, 246 S.W.3d at 303 (explaining that a judgment in such a case will bind the purchaser from a party to the litigation as it does the party of record and the filed lis pendens operates as constructive notice to a prospective buyer).

**18.** Other sources of information can alert a potential purchaser of a possible claim of interest on a property. Perhaps someone is residing on the property or there are new visible improvements on it. *See Madison v.*

interpretation of the statute risks "imbuing an expungement of a notice of lis pendens with the claim-preclusive effect of a full-blown adverse judgment on the merits." 469 S.W.3d at 193. As in this case, that means persons claiming an interest in property may be left in a worse position for having filed a lis pendens that is later expunged than had they not filed one. That result runs counter to longstanding Texas law encouraging the recording of real-property interests, including the filing of a lis pendens. *Id.*; *see also* TEX. PROP. CODE §§ 13.001–.004 (detailing the effects of not recording and the protections afforded to those who record their property interests).

■ Legislative enactments of the same subject should be harmonized whenever possible. *See Acker v. Tex. Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990). Our interpretation is faithful to the expungement statute's plain language and is consistent with the larger statutory framework. We acknowledge other sound policies might lie in a different interpretation of the words the Legislature chose. But this is not a case in which a plain-language interpretation would frustrate the statutory scheme at issue. Rather, there are perfectly good reasons the Legislature might have intended the interpretation we adopt today. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) ("Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on.").

\* \* \*

■ Cohen alleges that both Sandcastle and NewBiss had actual, independent knowledge of the issues covered by the lis pendens notice. Whether that is true is an unresolved fact issue precluding summary judgment. In light of Cohen's allegation, Sandcastle and NewBiss have not established bona-fide-purchaser status simply by relying on the expungement order. We reverse the court of appeals' judgment and remand to the trial court for further proceedings consistent with this opinion.

Justice Lehrmann filed an opinion concurring in part and dissenting in part.

Justice Willett filed a dissenting opinion, in which Chief Justice Hecht and Justice Devine joined.

Justice Lehrmann, concurring in part and dissenting in part.

Time and time again, this Court has emphasized that statutes must be construed in context and that every word must be given effect. In this case, we read the specific provision at issue, which outlines the effect of a recorded order expunging a notice of lis pendens, in the context of the overall statutory scheme governing lis-pendens notices and bona-fide real-property purchasers. Under this approach, I believe the only reasonable interpretation is that all subsequent purchasers may rely equally on the expunc-

*Gordon*, 39 S.W.3d 604, 607 (Tex. 2001) (acknowledging that occupant's possession provides constructive notice); *cf. Valdez v. Diamond Shamrock Ref. & Mktg. Co.*, 842 S.W.2d 273, 276 (Tex. 1992) ("[W]e hold that as a matter of law, a purchaser's knowledge that improvements have been recently made on a single piece of property is sufficient to impose constructive notice of a worker's right to assert a mechanic's lien within the statutory period."); *see also Parker v. McGinnes*, 842

S.W.2d 357, 362 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (holding "[t]here was no actual and visible appropriation of the lots that would have given notice of claim of ownership" in adverse possession case). Perhaps other individuals inform the potential buyer of similar facts to those included in the notice of lis pendens. The expunction statute does not address these situations which must be addressed by the fact finder in determining whether a buyer is a bona-fide purchaser.

tion order, regardless of how they learned of the underlying lis-pendens action. In holding that the order has no effect on purchasers who initially learned about the action from a source other than the lis-pendens notice itself, the Court reads a specific provision in isolation—missing the forest for the trees—and in doing so undercuts stalwart principles of statutory interpretation. Accordingly, I must respectfully express my dissent.

## I. Background

Sommers' predecessor in interest, Jay Cohen, filed suit alleging fraudulent transfers of real property. Cohen recorded a notice of lis pendens relating to that suit, but the trial court ordered the notice expunged on the ground that Cohen "failed to establish by a preponderance of the evidence the probable validity of a real property claim." Sandcastle Homes, Inc. and NewBiss Property, LP (the Buyers) each purchased a parcel of the property that was the subject of the fraudulent-transfer suit, and Cohen sought to set aside those conveyances. The issue here is the effect, if any, of the trial court's recorded expunction order on the Buyers' bona-fide purchaser status. The Buyers argue the expunction order eliminates all notice of the suit and renders them bona-fide purchasers, while Sommers argues the order had no effect on the Buyers' notice of the suit obtained independently of the lis-pendens notice itself, and that the Buyers therefore took the property subject to the suit's outcome.

## II. Discussion

### A. Effect of Recorded Expunction Order on Subsequent Purchasers

A properly recorded notice of lis pendens constitutes "notice to the world," in-

cluding subsequent purchasers, that an action is pending "involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property." TEX. PROP. CODE §§ 13.004(a), 12.007(a). But a recorded court order expunging the lis-pendens notice also impacts subsequent purchasers:

> After a certified copy of an order expunging a notice of lis pendens has been recorded, the notice of lis pendens and any information derived from the notice:
>
> (1) does not:
>
> (A) constitute constructive or actual notice of any matter contained in the notice or of any matter relating to the proceeding;
>
> (B) create any duty of inquiry in a person with respect to the property described in the notice; or
>
> (C) affect the validity of a conveyance to a purchaser for value or of a mortgage to a lender for value; and
>
> (2) is not enforceable against a purchaser or lender described by Subdivision (1)(C), regardless of whether the purchaser or lender knew of the lis pendens action.

TEX. PROP. CODE § 12.0071(f).[1] Noting that the "extent" of the expunction statute's protection of subsequent purchasers "is expressly limited to 'the notice of lis pendens' and 'any information derived from the notice,'" the Court holds that a recorded expunction order has no effect on subsequent purchasers who learned of the underlying action independently of the lis-pendens notice. *Ante* at 755–56. This means that such purchasers take the property subject to the outcome of the claims

---

1. As the Court notes, section 12.0071 has been amended, but the amended version is effective September 1, 2017, and is thus inapplicable to this case. *Ante* at 754.

being litigated, while purchasers who learned of the exact same litigation via the notice of lis pendens (either constructively or by reading the notice) take the property free and clear of the claimant's interest. In effect, a purchaser's ability to rely on the expunction order depends on the source of the purchaser's notice of the underlying suit.

The Court reaches this decision by reading the phrase "information derived from the notice [of lis pendens]" in subsection (f) to encompass only the actual contents of the notice itself. In my view, this interpretation fails to give full effect to subsection (f)'s language and the surrounding statutory context. As discussed below, I would read the provision more broadly than the Court to generally encompass information about the underlying lis-pendens action. I believe this is the only reasonable construction of the statute when read as a whole. *See City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013) ("We examine statutes as a whole to contextually give meaning to every provision.").

First, the specific language of subsection (f) supports this construction. The statute provides that "[a]fter [an expunction order] has been recorded, the notice of lis pendens and any information derived from the notice ... is not enforceable against a purchaser ... *regardless of whether the purchaser ... knew of the lis pendens action.*" Tex. Prop. Code § 12.0071(f)(2) (emphasis added). This language indicates that the source of the purchaser's knowledge—whether actual or constructive, and whether from the lis-pendens notice or some other point of origin—is immaterial. Moreover, "information about the underlying lawsuit" and "information derived from the lis-pendens notice" are essentially synonymous phrases, as the entire point of a lis-pendens notice is to tell the world about

the lawsuit. *Id.* §§ 12.007(a), 13.004(a). Subsection (f) therefore has broader impact than the Court allows.

Moreover, considering subsection (f) in the context of the overall legislative framework governing bona-fide purchasers cements this interpretation. Under the codified bona-fide purchaser doctrine, an instrument reflecting a property conveyance or interest will not cloud the title of a subsequent purchaser, so long as the purchaser pays valuable consideration and lacks actual and constructive notice of the instrument. *Id.* § 13.001. All persons have constructive notice of instruments that are "properly recorded in the proper county." *Id.* § 13.002. These statutes place purchasers with constructive notice of a property interest on even footing with those who have actual notice; that is, the recorded instrument will cloud their respective titles equally.

In turn, a notice of lis pendens qualifies as an instrument reflecting a property interest, and recording it in the proper county "constructively notif[ies] anyone taking an interest in real property that a claim is being litigated against the property." *Long Beach Mortg. Co. v. Evans*, 284 S.W.3d 406, 414 (Tex. App.—Dallas 2009, pet. denied). Thus, a properly recorded lis-pendens notice places prospective buyers who don't actually know about the pending action in the same position as those who do: both will acquire their interest in the property subject to the claims being litigated. *World Sav. Bank, F.S.B. v. Gantt*, 246 S.W.3d 299, 303 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *see also* Tex. Prop. Code § 13.004(b) ("A transfer or encumbrance of real property involved in a proceeding ... to a third party who has paid a valuable consideration and who does not have actual or constructive notice of the proceeding is effective ... unless a notice of the pendency of the proceeding

has been recorded ... in each county in which the property is located."). Again, actual notice and constructive notice have the same legal consequences.

By providing a mechanism for constructive notice of an action involving real property, the Property Code protects the claimant's alleged rights in the disputed property. *Collins v. Tex. Mall, L.P.*, 297 S.W.3d 409, 418 (Tex. App.—Fort Worth 2009, no pet.). But as the court of appeals in this case recognized, these provisions can also serve to encumber property for lengthy periods of time, irrespective of the merits of the underlying claim. 469 S.W.3d 173, 182 (Tex. App.—Houston [1st Dist.] 2015) (citing Herbert A. Janzen, *Texas Statutory Notice of Lis Pendens: A Deprivation of Property Interest without Due Process?*, 19 ST. MARY'S L.J. 377, 385 (1987)). Accordingly, the Property Code also provides a procedure by which another party to the action may seek to have the notice of lis pendens "expunged," that is, "erase[d] or destroy[ed]." TEX. PROP. CODE § 12.0071; *Expunge*, BLACK'S LAW DICTIONARY (10th ed. 2014). As is relevant here, the statute requires the trial court to order a lis-pendens notice expunged if "the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim." TEX. PROP. CODE § 12.0071(c)(2).[2] The claimant must therefore satisfy a threshold evidentiary showing on the merits of its real-property claim to continue to encumber the property during the pendency of the underlying suit. If the claimant cannot do so and an expunction order is entered and recorded, subsection (f) ensures that neither the notice of lis pendens nor the "information derived from the notice"—that is, the suit

itself—is enforceable against a subsequent purchaser for value. *Id.* § 12.0071(f).

In this way, the Legislature provided a method to remove the cloud on title created by the lis-pendens notice and the underlying lawsuit when that suit lacks merit. But even though all persons have notice of a recorded expunction order, the Court holds that not all persons may rely on it. Instead, some subsequent purchasers will still take the property subject to the outcome of the suit, but others will not, depending on how they first learned about the action. So although a recorded lis-pendens notice places subsequent purchasers on equal footing, a recorded expunction order does the opposite, and only those who learned of the suit via the notice may rely on the order. I see no logical basis for this distinction and cannot conclude that the Legislature intended such disparate treatment.

Instead, I agree with the following apt explanation proffered by the court of appeals:

The statutory provisions providing for expungement of lis pendens notices—the aim of which is to curtail burdening of real property pretrial, for lengthy periods, without evidentiary support—would be of little use if every case necessitated inquiry into, and turned on, whether a purchaser physically read the lis pendens or was told about the lis pendens or the underlying lawsuit by another person. Read as a whole, the lis pendens and expungement scheme is designed to differentiate cases in which the proponent of the notice of lis pendens can demonstrate a probable right of recovery on an underlying real-property claim from cases in which the proponent can-

---

2. The trial court must also order the lis-pendens notice expunged if the court determines that "the pleading on which the notice is based does not contain a real property claim"

or that "the person who filed the notice for record did not serve a copy of the notice on each party [statutorily] entitled to a copy." TEX. PROP. CODE § 12.0071(c)(1), (3).

not; nothing indicates that the legislature intended the determination of whether title to a property is encumbered to turn instead on whether each potential buyer learns of an underlying claim that is the subject of a lis pendens notice by literally reading the notice or by some other means.

469 S.W.3d at 185. The court's reasoning is sound and demonstrates the importance of reading statutes contextually.

In sum, the lis-pendens statute protects a claimant's rights in the disputed property against subsequent purchasers, regardless of whether they have actual knowledge of the underlying suit. But a recorded expunction order renders the lis-pendens notice and underlying action unenforceable with respect to a subsequent bona-fide purchaser for value "regardless of whether the purchaser ... knew of the lis pendens action." TEX. PROP. CODE § 12.0071(f)(2). I would hold that, however a subsequent purchaser acquires knowledge (actual or constructive) of the underlying lis-pendens action, he is entitled to rely on the expunction order. That is, I would hold that the source of the purchaser's knowledge of the lis-pendens action is irrelevant to his bona-fide purchaser status.[3]

## B.   Timing of the Expunction Order

In light of my interpretation of the expunction statute, I would hold that New-Biss's purchase of Tract II is not burdened by Sommers' litigation. However, I cannot say the same about Sandcastle's purchase of Tract I. As the Court notes, the court of appeals stayed the trial court's expunction order while it considered a request for mandamus relief. *Ante* at 752. The stay was filed in the real property records, and Sandcastle acquired Tract I while that stay was in effect. In evaluating notice and bona-fide purchaser status, one must look at the state of the property records at the time of purchase. *See* TEX. PROP. CODE § 13.001(a) (describing the effect of recorded instruments on "a subsequent purchaser"). Because the expunction order had been stayed when Sandcastle purchased Tract I, he cannot have relied on that order. Accordingly, I agree with the Court that Sandcastle's title to Tract I is subject to the outcome of the suit.

## III.   Conclusion

I agree with the court of appeals' interpretation of the expunction statute and would affirm its judgment as to NewBiss. However, because I conclude Sandcastle may not rely on an expunction order that was stayed when Sandcastle purchased Tract I, I agree with the Court that the court of appeals' judgment should be reversed as to Sandcastle. Accordingly, I concur in the Court's judgment in part and otherwise respectfully dissent.

Justice Willett, joined by Chief Justice Hecht and Justice Devine, dissenting.

Sommers argues that Sandcastle and NewBiss had actual knowledge of the Cohen lawsuit concerning the West Newcastle property when they bought the property, and that they acquired this knowledge independently of the lis pendens notices of

---

**3.**   Under the amended version of section 12.0071(f), there is no doubt that a recorded expunction order applies to subsequent purchasers regardless of how they learned of the underlying lis-pendens action. *See* Act of May 9, 2017, 85th Leg., R.S., S.B. 1955, § 1 (to be codified as an amendment to TEX. PROP. CODE § 12.0071(f)) (amending section 12.0071(f) to state, in part, that after an expunction order has been recorded, "an interest in the real property may be transferred or encumbered free of all matters asserted or disclosed in the notice and all claims or other matters asserted or disclosed in the action in connection with which the notice was filed").

the Cohen lawsuit. On this basis, Sommers says the trial court erred in granting summary judgment for Sandcastle and New-Biss, and the Court agrees.

Frankly, the statute is a linguistic mare's nest. The Court today refers to the statute's "plain text"[1] and "plain language,"[2] but this provision is the antithesis of plain. It is a muddle the Court must muddle through. And while I understand the Court's interpretation, I do not share it. I read the statute differently, and would reach a different result—namely, one that doesn't effectively repeal subsection (f)(2). I agree with the trial court and the court of appeals that the statute grants bona-fide purchaser status to Sandcastle and NewBiss.

* * *

Subsection 12.0071(f) of the Property Code states:

> After a certified copy of an order expunging a notice of lis pendens has been recorded, the notice of lis pendens and any information derived from the notice:
>
> (1) does not:
>
> (A) constitute constructive or actual notice of any matter contained in the notice or of any matter relating to the proceeding;
>
> (B) create any duty of inquiry in a person with respect to the property described in the notice; or

(C) affect the validity of a conveyance to a purchaser for value; and

(2) is not enforceable against a purchaser or lender described by Subdivision (1)(C), regardless of whether the purchaser or lender knew of the lis pendens action.[3]

The recorded order of expunction negates "the notice of lis pendens and any information derived from the notice."[4] The Court reasons that since a fact issue is present as to whether "Sandcastle and NewBiss had actual, independent knowledge of the issues covered by the lis pendens notice," summary judgment for them was inappropriate.[5]

This case turns on the meaning of "notice of lis pendens." The Court reasons that "a notice of lis pendens" and "the notice of lis pendens" referenced in the opening passage of subsection 12.0071(f) means the *written, recorded* notices of lis pendens filed by Cohen. For example, the Court reads subsection 12.0071(f) as inapplicable if the purchaser "receives notice of a third-party claim by some means other than a *recorded* notice of lis pendens."[6] It says the statute addresses "notice arising from the lis pendens *filing*"[7] and "directs expunction of a *recorded* lis pendens notice and eradicates the effects of filing one."[8] This construction is not unquestionably wrong. For one thing, subsection 12.0071(a) permits an application to expunge in cases "in which a notice of lis

---

1. *E.g., ante* at 755.

2. *E.g., ante* at 751.

3. Tex. Prop. Code § 12.0071(f). As the Court notes, the statute was amended days ago. *Ante* at 751, 754 nn. 2, 14. Moving forward, the new (and improved) language will cleanly cover "actual knowledge" situations like this. Today's case is governed by the prior version of subsection 12.0071(f).

4. *Id.*

5. *Ante* at 757.

6. *Ante* at 755 (emphasis added) (quoting *Cohen v. Sandcastle Homes, Inc.*, 469 S.W.3d 173, 190 (Tex. App.—Houston [1st Dist.] 2015) (Massengale, J., dissenting)).

7. *Ante* at 756 (emphasis added).

8. *Ante* at 755 (emphasis added).

pendens has been *filed*." [9] When construing a statutory provision, we can and should consider the provision in the context of related provisions and the statute as a whole.[10]

But there is another plausible reading. I read "notice of lis pendens" in subsection 12.0071(f) more broadly than the Court, and would construe the term to mean, simply, notice or knowledge of pending litigation regarding the property in question. I would not limit the clause to mean a written, recorded notice of lis pendens. Under this reading, Sandcastle and New-Biss took title free of the claim reflected in the recorded notice of lis pendens whether they acquired knowledge of the underlying litigation from the recorded document or other sources.

In construing a statute, we should begin, and usually end, the inquiry by looking to the plain and common meaning of its words.[11] "[N]otice of lis pendens" in subsection 12.0071(f) is not expressly limited to a written, recorded document. "Lis pendens" literally means "a pending lawsuit"

and retains that meaning in modern legal parlance. *Black's Law Dictionary* not only notes, in its etymology of "lis pendens," that the term is Latin for "a pending lawsuit," but unremarkably states as its first definition that the term means "[a] pending lawsuit." [12] So a notice of lis pendens need not always be a legal term of art. It can simply mean notice of pending litigation.

Of course, the especially important legal consequence of a notice of lis pendens is ordinarily manifested when the notice is written up according to statutory requirements and recorded in the courthouse real-property records. Section 12.007 of the Property Code, titled "Lis Pendens," states that a party to a title dispute "may *file for record* with the county clerk ... a notice that the action is pending," [13] provided that the notice includes certain required particulars of the title suit.[14] Under the Code, "[a] *recorded* lis pendens is notice to the world of its contents." [15]

Hence, the effect of a recorded and statutorily compliant notice of lis pendens is

9. Tex. Prop. Code § 12.0071(a) (emphasis added).

10. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) ("Language cannot be interpreted apart from context."); *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 929 (Tex. 2010) ("Before parsing the language of § 21.307, a brief survey of the surrounding statutory landscape provides a helpful context for that section's use of the term 'party'...."); *Tooke v. City of Mexia*, 197 S.W.3d 325, 329 (Tex. 2006) (noting that "the import of these [statutory] phrases cannot be ascertained apart from the context in which they occur"); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) ("We determine legislative intent from the entire act and not just its isolated portions."); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("[W]e must always consider the statute as a whole rather than its isolated provisions.").

11. *See City of San Antonio*, 111 S.W.3d at 25 ("If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning."); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) ("[I]t is cardinal law in Texas that a court construes a statute, first, by looking to the plain and common meaning of the statute's words. If the meaning of the statutory language is unambiguous, we adopt, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms.") (footnotes, internal quotation marks omitted).

12. *Lis pendens*, Black's Law Dictionary (7th ed. 1999).

13. Tex. Prop. Code § 12.007(a) (emphasis added).

14. *Id.* § 12.007(b).

15. *Id.* § 13.004(a) (emphasis added).

that *all* would-be purchasers are put on *constructive* notice that the filer has brought a suit claiming an interest in the property, thus precluding the would-be purchaser from acquiring innocent-purchaser status.[16] The lis pendens procedure is part of the Property Code's Title 3, which is titled "Public Records" and provides a general system for the public recording of real-estate records. It is a Texas version of recording acts that date back hundreds of years.[17] According to one author, "The Recording Acts have come into existence primarily to fulfill the 'needs' and requirements of the people enacting them—the ultimate need being the protection of the bona fide purchaser for value in a real estate conveyance."[18] We have noted that public property records generally "constitute constructive notice" and serve the "need for stability and certainty regarding titles to real property."[19]

Chapter 13 of Title 3 is titled "Effects of Recording." The general effect of recording a real-property interest is set out in subsection 13.001(a). A conveyance of an interest "is void as to a creditor or subsequent purchaser for a valuable consideration without notice" unless the conveyance is recorded.[20] However, an "unrecorded instrument is binding ... on a subsequent purchaser ... who has notice of the instrument."[21] In other words, a purchaser is not entitled to bona-fide purchaser status if he has actual knowledge of a property interest, even if the interest is not properly recorded under the recording statutes so as to provide constructive notice to everyone. And specifically as to pending litigation regarding real property, subsection 13.004(b) provides that even if a notice of lis pendens is not properly prepared and filed, a third party takes title to the property free of the lis pendens proceeding only if the third party "does not have actual or constructive notice of the proceeding."[22] In other words, the purchaser's actual knowledge of the proceeding defeats bona-fide purchaser status even if constructive notice was not provided under the recording statutes by way of a properly prepared and filed notice of lis pendens.

16. *See Saravia v. Benson*, 433 S.W.3d 658, 666 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Saravia ... is thus properly charged with constructive notice of the previously filed lis pendens. Because Saravia had constructive notice, Saravia is not a bona fide purchaser.") (citation omitted); *Long Beach Mortg. Co. v. Evans*, 284 S.W.3d 406, 414 (Tex. App.—Dallas 2009, pet. denied), *cert. denied*, 561 U.S. 1006, 130 S.Ct. 3470, 177 L.Ed.2d 1056 (2010) ("The lis pendens statute gives litigants a method to constructively notify anyone taking an interest in real property that a claim is being litigated against the property."); *In re Collins*, 172 S.W.3d 287, 292 (Tex. App.—Fort Worth 2005, orig. proceeding) (same); *In re Jamail*, 156 S.W.3d 104, 107 (Tex. App.—Austin 2004, no pet.) ("Lis pendens is a mechanism to give constructive notice to all those taking title to the property that the claimant is litigating a claim against the property."); *Cherokee Water Co. v. Advance Oil & Gas Co.*, 843 S.W.2d 132, 135 (Tex. App.—Texarkana 1992, writ denied) ("The common law rule of *lis pendens* has been codified as it applies to ... suits involving title or interests in ... real property. The rule effectively prevents a grantee from being an innocent purchaser.") (citing Tex. Prop. Code §§ 12.007, 13.004).

17. *See* P.H. Marshall, *A Historical Sketch of the American Recording Acts*, 4 Clev.-Marshall L. Rev. 56, 61 (1955) (tracing American recording acts to various origins including the English Statute of Enrollments of 1536).

18. *Id.* at 56.

19. *Cosgrove v. Cade*, 468 S.W.3d 32, 38 (Tex. 2015) (quoting *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).

20. Tex. Prop. Code § 13.001(a).

21. *Id.* § 13.001(b).

22. *Id.* § 13.004(b).

But subsection 12.0071(f) is different. Its effect is not confined to constructive notice. It states to the contrary in subsection (f)(2) that after a court takes the affirmative step of expunging a notice of lis pendens, the recording of that order protects purchasers like Sandcastle and NewBiss "regardless of whether the purchaser or lender knew of the lis pendens action."[23] I read it to bestow bona-fide purchaser status whether the purchaser became aware of the pending litigation through direct knowledge, or the purchaser is deemed aware of the pending litigation through constructive knowledge that is imputed "to the world" by a properly filed notice of lis pendens. We can give effect to subsection (f)(2) by reading "notice of lis pendens" at the beginning of subsection 12.0071(f) to include both constructive notice from the filed notice of lis pendens as well as notice of the "lis pendens," literally the pending litigation, from other sources.

The problem with the Court's construction is that it effectively repeals subsection (f)(2). The Court holds that Sandcastle's and NewBiss' knowledge of the Cohen suit from sources independent of the written, recorded notice of lis pendens defeats bona-fide purchaser status, despite subsection (f)(2)'s command that their notice of the pending litigation "is not enforceable" against them "regardless of whether the purchaser or lender knew of the lis pendens action."[24] The Court interprets the "regardless of" language to refer only to actual or constructive notice derived from the written, recorded notice of lis pendens. But if the Court is right that section 12.0071 applies only to the notice of lis pendens *document*, constructive or actual notice is already extinguished under this section—directly before subsection (f)(2) in subsection (f)(1): "the notice of lis pendens ... does not ... constitute constructive or actual notice of any matter contained in the notice...."[25] The Court's interpretation thus renders subsection (f)(2) a nullity, holding it merely reiterates the notice already eliminated in subsection (f)(1). But proper statutory interpretation gives effect to each provision of a statute—ensuring none is rendered meaningless or "mere surplusage."[26] Moreover, the language of subsection (f)(2) expressly encompasses both imputed knowledge of the sort ordinarily associated with a filed notice of lis pendens and actual knowledge of the title dispute acquired from other sources.

My interpretation of subsection 12.0071(f) better harmonizes and gives meaning to all the subsections of the provision, including subsection (f)(2). It is also consistent with other provisions of the Code, which specify the effect of a recorded or filed notice of lis pendens, as opposed to subsection 12.0071(f), which does not specify a notice of lis pendens that has been filed or recorded. In matters of statutory construction, we should strive to harmonize the statute's provisions and give effect to all of them.[27]

**23.** *Id.* § 12.0071(f)(2).

**24.** *Id.*

**25.** *Id.* § 12.0071(f)(1)(A).

**26.** *TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016); *see also State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006) ("In construing a statute, we give effect to all its words and, if possible, do not treat any statutory language as mere surplusage."); *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) ("Consistent with these fundamental principles, we give effect to all the words of a statute and do not treat any statutory language as surplusage, if possible.") (brackets, internal quotation marks omitted).

**27.** *See Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001) ("We should not give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a con-

Further, there is nothing anomalous in construing subsection 12.0071(f) as providing more expansive bona-fide purchaser protection than, say, sections 13.001 or 13.004. Those provisions concern the effect of recording a real-estate document vel non. But the expunction proceeding set out in section 12.0071 requires action by a court, which may consider sworn evidence, conduct an oral hearing, and order discovery[28]—in short, actual litigation of the validity of the lis pendens claim.

\* \* \*

In my view, "notice of lis pendens" in subsection 12.0071(f) simply and broadly means notice or knowledge of Cohen's suit involving the property, meaning the recorded order of expungement allowed Sandcastle and NewBiss to claim bona-fide purchaser status, free of Cohen's claims. I would affirm the court of appeals' judgment, which in turn affirmed the trial court's summary judgment for Sandcastle and NewBiss.

struction standing alone. We must presume that the Legislature intends an entire statute to be effective. . . . ") (citation omitted).

28. *See* TEX. PROP. CODE § 12.0071(a)–(b).